# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THERESA HILL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF CHICAGO, a municipal ) <br> corporation; ANTHONY BOSWELL, ) <br> individually and in his official capacity as ) <br> Executive Director of the City of Chicago's ) <br> Office of Compliance; TORRICK WARD, ) <br> individually and in his official capacity as ) <br> Deputy Director for the City of Chicago's ) <br> Office of Compliance; PAUL VOLPE, ) <br> individually and in his official capacity as ) <br> Chief of Staff for the Mayor of the City of ) <br> Chicago; and JOHN DOES 1-5, not yet known ) <br> to the Plaintiff, ) <br> ) <br> Defendants. ) | 09 C 6370 <br><br> Hon. Charles R. Norgle |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Plaintiff brings claims pursuant to the Shakman Decree and 18 U.S.C. § 1983 against the City of Chicago ("City") and various individual Defendant City officers. Before the Court are Defendants' Motions to Dismiss. For the following reasons, the Motions are granted as to Plaintiff's Shakman claim and denied as to her 18 U.S.C. § 1983 claim. In addition, Plaintiff's claims against the individual Defendants in their official capacities are dismissed as redundant.

1

## I. BACKGROUND

### A. The Shakman Decree

One of the primary claims in Plaintiff's Complaint is that Defendants violated the well-recognized Shakman Decree. For clarity, the Court will provide a brief introduction to the Shakman case before setting forth Plaintiff's allegations.

In 1969, Michael Shakman and another plaintiff brought suit in the Northern District of Illinois against the Mayor and Treasurer of the City of Chicago along with numerous other local governmental entities. Shakman alleged that:

> officers of the city and county require city and county employees, as a condition of holding their jobs and drawing their salaries from the public treasuries, to furnish votes, campaign work, and money to elect candidates chosen by the regular democratic organization, and that this practice makes more difficult and often prevents the election of other candidates.

Shakman v. Democratic Org. of Cook County, 435 F.2d 267, 268 (7th Cir. 1970). The parties entered into a Consent Decree (the "Shakman Decree") in May 1972 which prohibited the defendants from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time a governmental employee, upon or because of any political reason or factor." Tomczak v. Chicago, 765 F.2d 633, 635 (7th Cir. 1985). This Shakman Decree was later broadened to include the defendants' hiring practices. Shakman v. Democratic Org. of the City of Chicago, 569 F. Supp. 177 (N.D. Ill. 1983). Under the Shakman Decree, with the exception of certain exempt positions, it is presently unlawful for the City of Chicago to take political considerations into account in any employment actions, such as recruitment, hiring, promotions, terminations, or transfers. Id. The Northern

District of Illinois has retained jurisdiction over the Shakman case, and enforces the Shakman Decree by way of a federal Monitor. Tomczak, 765 F.2d at 635.

**B. Facts**

Theresa Hill ("Hill"), Plaintiff in the instant suit, is currently employed as an Assistant Commissioner of Legal Compliance for the City. Defendant Anthony Boswell ("Boswell") is the Executive Director of the City's Office of Compliance ("OC"). Defendant Torrick Ward ("Ward") is a Deputy Director for the OC. Defendant Paul Volpe ("Volpe") is the Chief of Staff for the Mayor of the City. John Does 1-5 are unidentified members of the Mayor's staff.

Hill makes the following factual allegations in her Complaint. In August 2008, she was awarded damages pursuant to the Shakman Decree, and the City transferred her from the Department of Human Resources to the OC at the request of the federal Monitor. In May 2009, Ward (Hill's supervisor), Boswell, and a John Doe Defendant told Hill that she would be offered the position of Senior Compliance Officer with the OC. Hill does not allege that she ever received that position. Instead, she alleges that in July 2009, Boswell told Hill that she would be appointed to the position of Sexual Harassment Officer, which was a Shakman Decree protected position. This appointment would have included an increase in salary for Hill. Before Hill could receive this position, however, Boswell allegedly told Hill that she needed the support of City aldermen. When Hill informed Boswell that she did not know any aldermen, he allegedly replied that this would have to change.

Hill further alleges that Boswell informed Volpe that the OC wanted Hill to start work at her new position on August 10, 2009. Before Hill assumed her new duties, however, Volpe told

3

Boswell that the Mayor's Office was not in favor of Hill's appointment. Hill never received the position.

In September 2009, Hill met several times with Boswell and Ward. During these meetings, Hill alleges that she reminded Boswell and Ward that interference from the Mayor's Office regarding her promotion was unlawful under the Shakman Decree. Boswell and Ward allegedly replied that the position of Sexual Harassment Officer had never been offered to Hill, and that this entire incident had been a misunderstanding. Hill then filed a Complaint with the federal Monitor against Boswell and Ward regarding these allegedly unlawful political influences.

On September 14, 2009, Hill alleges, unidentified City officials informed Hill that she was no longer employed by the OC, and that she should report immediately to the City's Department of Human Services. Chicago Police Officers then escorted Hill out of her office at the OC. Hill alleges that her new position requires a much lower skill level, and that her new work space is sparsely equipped and significantly smaller than her prior work space. Hill again complained to the federal Monitor, but the Monitor allegedly indicated that at this point Hill should speak with an attorney. The record in this case contains no indication of whether the federal Monitor issued any formal disposition of Hill's Complaint.

## C. Procedural History

Hill filed the instant Complaint in the Northern District of Illinois on October 9, 2009. The Complaint includes one Count under the Shakman Decree, and one Count under 18 U.S.C. § 1983. In her § 1983 Count, she alleges violations of her First, Fourth, and Fourteenth Amendment rights. The City and Volpe have filed a joint Motion to Dismiss. Ward and Boswell

4

have filed separate Motions to Dismiss. All of these Motions are fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

In deciding a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts as true, and draws all reasonable inferences in favor of the plaintiff. See, e.g., Jackson v. E.J. Brach Corp., 176 F.3d 971, 977-78 (7th Cir. 1999). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 327 (7th Cir. 1999); see Leatherman v. Tarrant County, 507 U.S. 163, 168 (1993); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). When reviewing a motion to dismiss under Rule 12(b)(6), the Court therefore merely looks at the sufficiency of the complaint, it does not decide whether the plaintiff has a winning claim. McCormick v. City of Chi., 230 F.3d 319, 323-26 (7th Cir. 2000).

The Court recognizes, however, that the "old formula – that the complaint must not be dismissed unless it is beyond doubt without merit – was discarded by the Bell Atlantic decision." Limestone Dev. Corp. v. Vill. of Lamont, 520 F.3d 797, 803 (7th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007)). Following Bell Atlantic, a complaint will survive a motion to dismiss only when the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

5

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations removed).

## B. Defendants' Motions to Dismiss

### *1. Count One – Violation of Shakman Decree*

In support of her Shakman claim, Hill alleges that the position she was offered, Sexual Harassment Officer, was a covered position under the Shakman Decree. Under the Shakman Decree, the City agreed to and implemented a formal hiring plan for individuals seeking positions with the City. See Shakman, 569 F. Supp. at 177. In the City and Volpe's joint Motion to Dismiss, they include as an exhibit the City's current Senior Manager Hiring Process ("Hiring Process") under the Shakman Decree. Hill does not dispute that this exhibit is a true and correct copy of the City's Hiring Process. She also does not dispute that this Hiring Process applies to the position she was allegedly promised. This Hiring Process includes the following provisions: (1) The City's Hiring Department must prepare a job description for each Senior Management vacancy. This description must describe the responsibilities and minimum qualifications for the position. (2) The job description must be posted for a minimum of one week on the City's website. (3) The City's Department of Human Resources must maintain a referral list of candidates who meet the minimum qualifications. (4) All interested candidates must send their applications and related materials to the Department of Human Resources within the applicable posting period. (5) The Hiring Department must interview at least one more candidate than the number of open positions. (6) A City employee who interviews a candidate must complete an interview evaluation form at the conclusion of the interview. (7) If the Hiring Department rejects all the candidates, the Department of Human Resources shall post the job description

6

again. (8) Prior to offering a candidate a position, the Commissioner of the Hiring Department must review all of the interview evaluation forms, prepare in writing the reasons for selecting the successful candidate, and complete and sign the Senior Manager Hire Certification Form. Ex. 1, the City and Vople's Mot. to Dismiss.[1]

Throughout her Complaint, Hill repeatedly alleges that she was to be "appointed" to the Shakman protected position of Sexual Harassment Officer without making any reference to whether the City would follow the procedures required by the Shakman Decree. Compl., ¶ 14 ("In or about July 2009, Defendant Boswell met with Plaintiff and expressed his intent to appoint her to the role of Sexual Harassment Officer for the City of Chicago."); ¶ 16 ("On information and belief, in or about the first week of August 2009, Defendant Boswell advised Defendant Paul Volpe, who is the Chief of Staff for the Mayor of the City of Chicago, that the Office of Compliance intended to appoint/transfer Plaintiff into the position of Sexual Harassment Officer for the City of Chicago."); ¶ 17 ("Defendant Boswell advised Defendant Volpe that following the appointment of Plaintiff into the role of Sexual Harassment Officer . . ., the [OC] planned to inform all departments of the appointment, [and] tender a press release announcing the

---

[1] The Court notes that at the 12(b)(6) stage of this litigation, it would normally be confined to Hill's Complaint, which does not contain this exhibit. McCready v. eBay, Inc., 453 F.3d 882, 891 (7th Cir. 2006). However, under FRCP 10(c), a "copy of any written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Interpreting this Rule, the Seventh Circuit has determined that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." 188 LLC v. Trinity Indus., Inc., 300 F.3d 730, 735 (7th Cir. 2002). The Shakman Decree is obviously crucial to Hill's Shakman claim, and she makes repeated references to this Decree in her Complaint. The City's Shakman-mandated Hiring Process was included by Defendants in their Motion to Dismiss, and Hill does not dispute its contents. The Court thus determines that it is within its discretion to include this exhibit in its consideration of Defendants' Motions to Dismiss.

7

appointment . . . ."); and ¶ 18 ("Defendant Boswell further advised Defendant Volpe that the [OC] wanted to appoint and promote Plaintiff to the position effective August 10, 2009.").

Defendants assert that Hill cannot plausibly allege that Defendants' failure to "appoint" her to a Shakman-protected position without following the procedures specifically outlined in the City's Shakman Decree-based Hiring Process is itself a violation of the Shakman Decree. The Court agrees. The Court makes no ultimate factual finding that Hill's eventual "appointment" to this position, had this actually occurred, would have violated the Shakman Decree. However, the Court does find that Hill's allegations, which the Court must take as true at the Motion to Dismiss stage of this litigation, describe a process by which Hill was to be "appointed" to a Shakman-protected position without Defendants or Hill completing the procedures required by the City's Shakman-mandated Hiring Process. Hill's allegation, which, again, the Court must take as true, is that Defendants promised to hire her in a manner that would violate the Shakman Decree, then refused to honor that unlawful promise. This allegation cannot plausibly make out a claim for a violation of the Shakman Decree. See Iqbal, 129 S. Ct. at 1949; Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995) ("a plaintiff can plead himself out of court by alleging facts which show that he has no claim."). Defendants' Motions to Dismiss are therefore granted as to Hill's Shakman claim.

### 2. *Count Two – Violation of Civil Rights (18 U.S.C. § 1983)*

In Count II of her Complaint, Hill alleges that Defendants' actions violated her Constitutional rights under the First, Fourth, and Fourteenth Amendments.[2] Specifically, Hill

---

[2] In her Response to the City and Volpe's joint Motion to Dismiss, Hill concedes that she has not stated a cause of action under the Fourth Amendment.

8

alleges that Defendants retaliated against her for exercising her First Amendment right to freedom of speech when she complained to Defendants and the federal Monitor about the alleged impropriety of revoking her job offer based on political considerations, and that Defendants' actions deprived her of her First and Fourteenth Amendment rights to work for the City free from political interference. Compl., ¶¶ 38-40.

### *a. First Amendment Freedom of Speech Claim*

In her Complaint, Hill alleges that she complained to Defendants about "the legality of revoking the [job] offer based on the disapproval of the City of Chicago, made complaints with the federal Monitor, and otherwise complained about improper hiring practices in the City of Chicago." Compl., ¶ 38(d). Hill then alleges that Defendants retaliated against her because of these complaints. Id. at ¶ 40. In response, Defendants assert that this claim fails to state a cause of action under the First Amendment, because Hill's complaints do not as a matter of law constitute constitutionally protected speech.

The Supreme Court, in Garcetti v. Ceballos, held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." 547 U.S. 410, 421 (2006). In other words, a public employee like Hill cannot use the First Amendment as a shield to protect her from the consequences of speech made in the course of her professional duties. Id. at 426. This is precisely the assertion Defendants make – because Hill made her complaints during the course of her official duties, she was speaking as an employee of the City, and those complaints therefore were not protected by the First Amendment. Given Defendants' argument, the Court must make a threshold determination

9

as to whether Hill spoke in her capacity as a private citizen or as an employee of the City. Id. at 421; Chaklos v. Stevens, 560 F.3d 705, 711-12 (7th Cir. 2009); Renken v. Gregory, 541 F.3d 769, 773 (7th Cir. 2009). "When determining whether a plaintiff spoke as an employee or as a citizen, we take a practical view of the facts alleged in the complaint, looking to the employee's level of responsibility and the context in which the statements were made." Abcarian v. McDonald, – F.3d –, No. 09-3208, 2010 U.S. App. LEXIS 16784, at *14 (7th Cir. Aug. 13, 2010) (citing Tamayo v. Blagojevich, 526 F.3d 1074, 1092 (7th Cir. 2008)).

It is not enough, however, for a First Amendment retaliation plaintiff to simply make a plausible allegation that he or she was speaking out as a private citizen. The plaintiff must also plausibly allege that he or she spoke out on a matter of public concern. Gross v. Cicero, – F.3d –, No. 06-4042, 2010 U.S. App. LEXIS 17911, at *16 (7th Cir. Aug. 27, 2010) (citing Valentino v. Vill. of S. Chi. Heights, 575 F.3d 664, 671 (7th Cir. 2009)). Grievances of a purely personal nature are not matters of public concern. Sullivan v. Ramirez, 360 F.3d 692, 699 (7th Cir. 2004). However, "[t]he fact that an employee has a personal stake in the subject matter of the speech does not necessarily remove the speech from the scope of public concern." Phelan v. Cook County, 463 F.3d 773, 791 (7th Cir. 2006). In order to determine whether a grievance is a matter of public concern, the Court must look at its "content, form, and context." Kokkinis v. Ivkovich, 185 F.3d 840, 844 (7th Cir. 1999).

In light of the above standards, the Court must first determine whether Hill has plausibly alleged that she spoke out as a private citizen rather than as a City employee. See Chacklos, 560 F.3d at 711-12. Hill alleges that her job duties "involved the handling of equal employment opportunity investigations." Compl., at ¶ 12. Her complaints to Defendants and the federal

10

Monitor center on what she categorizes as her personal "appointment" to a more prestigious and lucrative position with the City. Hill makes no specific allegations that she complained about any other City employee's job status, working conditions, termination, transfer, or promotion. As such, the Court finds that the context in which Hill allegedly made her complaints is one in which she spoke as a private citizen rather than an employee. See Tamayo, 526 F.3d at 1092. Hill therefore survives the initial threshold determination under Garcetti.

Next, the Court must determine whether Hill has also plausibly alleged that she spoke out on a matter of public concern. Defendants' assertion that Hill's speech was of a purely personal nature carries some weight, see Sullivan, 360 F.3d at 699, but Hill argues in response that the issue of the City's hiring practices is a matter of public concern. See Kokkinis, 185 F.3d at 844. The Court finds Hill's argument persuasive. "To be protected, employee speech must relate to a matter of 'political, social, or other concern to the community . . . .'" Miller v. Jones, 444 F.3d 929, 935 (7th Cir. 2006) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). Whether the City is conforming its hiring and other employment practices to the Shakman Decree is not simply a concern to Hill, but a concern to anyone who seeks a position with the City. See City of San Diego v. Roe, 125 S. Ct. 521, 525-26 (2004) (the public concern is the "subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public . . . ."). The Court therefore finds that Hill has plausibly alleged that her complaints were made on a matter of public concern.[3]

Hill has thus plausibly alleged that (1) she spoke out as a private citizen rather than a City employee, and (2) her complaints pertain to an issue of genuine concern for the community.

---

[3] See United States v. Sorich, 523 F.3d 702 (7th Cir. 2008).

11

Defendants' Motions to Dismiss are therefore denied as to Hill's First Amendment freedom of speech claim.

### b. *Right to Enjoy Occupation Free from Political Influence Claim*

Hill next alleges that Defendants "deprived [her] of her liberty and right to enjoy her occupation with the City of Chicago free from political influence." Compl., ¶ 39. Defendants argue that Hill has failed as a matter of law to state a claim for deprivation of liberty, and Hill concedes as much in her Response to the City and Volpe's joint Motion to Dismiss. Pl.'s Resp. to Defs.' Mot. to Dismiss, at 10. But Hill asserts that she has alleged something different. She asserts that she has made a plausible allegation of Defendants' violation of a separate right, "her right to enjoy her occupation free from political interference." Id.

The Supreme Court has indicated on numerous occasions that "conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so." Rutan v. Republican Party, 497 U.S. 62, 78 (1990) (citing Branti v. Finkel, 445 U.S. 507 (1980); Elrod v. Burns, 427 U.S. 347 (1976)). In Elrod, the Supreme Court indicated that dismissals based on political patronage violate employees' political beliefs and associations, which "constitute the core of those activities protected" by the First and Fourteenth Amendments. 427 U.S. at 356 (see also Vickery v. Jones, 856 F. Supp. 1313, 1320 (S.D. Ill. 1994)). The Supreme Court reaffirmed its position in Branti, holding that "the First Amendment prohibits the dismissal of a public employee solely because of his private political beliefs." 445 U.S. at 517. In Rutan, the Supreme Court extended Branti and Elrod's prohibition against politically motivated terminations to other sorts of employment decisions such as transfers and promotions. 497 U.S. at 75 ("We therefore determine that

12

promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees.").

In this case, Hill has alleged that she was denied a promotion based on her lack of political support from City aldermen and the Mayor's Office. In light of the Supreme Court's holdings in Rutan, Branti, and Elrod, this Court finds that this allegation states a plausible cause of action under the First and Fourteenth Amendments. Defendants' Motions to Dismiss are therefore denied as to Hill's political influence claim.

### c. *Qualified Immunity*

Next, with respect to Hill's § 1983 claim, the individual Defendants assert that they are entitled to qualified immunity as City officials. "[G]overnmental actors performing discretionary functions enjoy qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Estate of Escobedo v. Bender, 600 F.3d 770, 778 (7th Cir. 2010) (quoting Sallenger v. Oakes, 473 F.3d 731, 739 (7th Cir. 2007)). In order to determine whether the individual Defendants have qualified immunity in this case, the Court must determine whether Hill has plausibly alleged that Defendants violated a Constitutional right, and whether that right was "clearly established at the time of the alleged violation." Miller, 444 F.3d at 934 (quoting Finsel v. Cruppenink, 326 F.3d 903, 906 (7th Cir. 2003)). To be "clearly established," a right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Put another way, "in light of pre-existing law the unlawfulness [of the official's actions] must be apparent." Id.

In this case, the Court has determined that Hill has plausibly alleged that Defendants violated her First and Fourteenth Amendment rights to freedom of speech and freedom of political belief and association. These rights are clearly established by pre-existing Supreme Court and Seventh Circuit case law to which the Court has cited in this Opinion. See City of San Diego, 125 S. Ct. at 525-26; Garcetti, 547 U.S. at 421; Rutan, 497 U.S. at 78; Branti, 445 U.S. at 517; Elrod, 427 U.S. at 356; Chaklos, 560 F.3d at 711-12; Renken, 541 F.3d at 773; and Phelan, 463 F.3d at 791. The Court therefore finds that the individual Defendants are not entitled to qualified immunity.

### d. *Monell* Claim

Finally, the City asserts that Hill has not adequately alleged municipal liability for her § 1983 claim. It is axiomatic that the doctrine of respondeat superior is inapplicable to § 1983 actions. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n.58 (1978). In order for Hill to succeed in her § 1983 action against the City, she must demonstrate that the City itself violated her civil rights through "(1) an express municipal policy; (2) a widespread practice constituting custom or usage; or (3) a constitutional injury caused or ratified by a person with final policymaking authority." Darchak v. Chi. Bd. of Educ., 580 F.3d 622, 629 (7th Cir. 2009) (quoting Simmons v. Chi. Bd. of Educ., 289 F.3d 488, 494 (7th Cir. 2002)). At the Motion to Dismiss stage, however, Hill need not present evidence – she need only make a plausible allegation that the City violated her rights in one of these manners. See Iqbal, 129 S. Ct. at 1949.

Hill alleges that the City has engaged in a "pattern and practice" of basing employment decisions on political affiliation or support. Compl., at ¶ 38. The City correctly asserts that Hill only alleges her own personal experiences, but its conclusion that such an allegation cannot make

14

out a plausible Monell claim misses the mark. The Supreme Court has held that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell *unless* proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (emphasis added). Hill's alleged experiences involve two senior level City managers, the Chief of Staff for the Mayor of the City, and five John Doe members of the staff for the Mayor. As the Court has noted, Boswell allegedly advised Hill that she would need support from City aldermen in order for her to receive her promotion. Compl., at ¶ 15. In response, Hill explained that she did not know any aldermen. Id. Later, Volpe, Chief of Staff of the Mayor's Office, told the OC that it should not promote Hill. Id. at ¶ 20. When Hill complained to Boswell and Ward about this situation, City officials allegedly removed her from her job at the OC and assigned her to an inferior position. Id. at ¶¶ 23-31. Given these allegations, the Court finds that a reasonable inference exists that Hill could ultimately provide evidence that her experience was not an isolated one. The Court thus determines that Hill has stated a plausible claim for relief against the City under the "widespread practice" prong of municipal liability under § 1983. See McNabola v. Chi. Transit Authority, 10 F.3d 501, 511 (7th Cir. 1993) (a municipal "custom" may be established by showing that policymaking officials were aware of and acquiesced in the established practice); see also Twombly, 550 U.S. at 556 (in order to state a plausible cause of action, the plaintiff need only allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" of defendant's liability).

Because the City is a Defendant in this case, Hill's claims against the individual Defendants in their official capacities are dismissed as redundant. See Walker v. Sheahan, 526

F.3d 973, 977 (7th Cir. 2008) ("Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself."). Hill's claims against the individual Defendants in their individual capacities remain.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are granted as to Plaintiff's Shakman claim and denied as to her 18 U.S.C. § 1983 claim. In addition, Plaintiff's claims against the individual Defendants in their official capacities are dismissed as redundant.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, District Judge

Dated: September 15, 2010