UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Hon. John Robert Blakey |
| v. | ) Case No. 09 C 6370 |
| | ) |
| CITY OF CHICAGO, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS PAUL VOLPE AND TORRICK WARD'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR ORAL MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CONCLUSION OF PLAINTIFF'S CASE-IN-CHIEF**

Plaintiff sues Defendants Paul Volpe ("Volpe") and Torrick Ward ("Ward"), in their individual capacities pursuant to 28 U.S.C. §1983 ("Section 1983"), for political interference and retaliation. Specifically, Plaintiff alleges that Volpe violated her right to be free from political interference by unlawfully interfering with her appointment to the Sexual Harassment Officer ("SHO") position and claims that Ward failed to appoint her to the SHO position. She further claims that both Volpe and Ward retaliated against her for different reasons; as for Volpe, he allegedly retaliated against Plaintiff for complaints she made prior to September 2008; and for Ward, he allegedly retaliated against Plaintiff for complaining to the Federal Monitor about not being appointed to the SHO position and causing the end of her temporary detail to the Office of Compliance. Now that Plaintiff's case-in-chief has come to a close, judgment as a matter of law is warranted because: (1) Volpe and Ward are entitled to qualified immunity; (2) Plaintiff has failed to offer any evidence from which a reasonable jury could find either Volpe or Ward liable for a First Amendment constitutional violation; (3) Plaintiff has failed to offer any evidence from which a reasonable jury could find either Volpe or Ward liable for unlawful political

interference; and (4) even if one or more of the Section 1983 claims survives this motion, there is no basis for instructing the jury on punitive damages.

I. THE APPLICABLE STANDARD FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for a party on that issue," then the party's opponent is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 50(a). Stated another way, judgment as a matter of law is appropriate where a plaintiff has not presented enough evidence to allow a rational jury to find in his favor. *See Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924-25 (7th Cir. 2000). When examining the record, the Court should look to the totality of the evidence, and view the evidence and the inferences which may be taken from it in the light most favorable to the party against whom the judgment is to be granted. *Id.* at 924. This is fundamentally the same standard as applied for summary judgment, with the important difference that the Court now knows exactly what evidence was put before the jury. *Id.*

II. VOLPE AND WARD ARE ENTITLED TO QUALIFIED IMMUNITY

A. The Standard for Qualified Immunity

Now that the Court has had an opportunity to consider Plaintiff's claims in context and hear Plaintiff's evidence relating to her claims, Volpe and Ward renew their claim that they are entitled to qualified immunity. Qualified immunity is recognized as a defense to lawsuits because of the social cost of lawsuits brought against public officials – in other words, to "balance competing values" between the "rights of citizens" and "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). The U.S. Supreme Court explained further:

> [I]t cannot be disputed seriously that claims frequently run against the innocent as well as the guilty-at a cost not only to the defendant officials, but to society as a whole. These social costs include the expense of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.' *Id.* at 814.

Accordingly, in *Harlow*, the U.S. Supreme Court held, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Thus, it is appropriate for the judge to determine:

> not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. *Id.*

In *Sievert v. Gilley*, 500 U.S. 226 (1991), the U.S. Supreme Court addressed the analytical structure of qualified immunity issues and held:

> A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits. *Id.* at 232.

Moreover, the "protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The Seventh Circuit Court of Appeals has elaborated upon this standard further – "A clearly established right is one that is sufficiently clear such that 'every reasonable official would

3

have understood that what he is doing violates that right.'" *Thayer v. Chiczewski*, 705 F.3d 237, 253 (7th Cir. 2012).

> We do not define clearly established rights at a high level of generality but in a "particularized sense so that the contours of the right are clear to a reasonable official." Although it is not necessary for the plaintiff to identify a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 255.

In other words, "[t]he words 'clearly established ... constitutional rights' may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms.... The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993) (*quoting Colaizzi v. Walder*, 812 F.2d 304, 308 (7th Cir. 1987)). "For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel ... the conclusion for every like-situated, reasonable government agent that what [he] is doing violates federal law *in the circumstances*." *Khuans v. School Dist. 110*, 123 F.3d 1010, 1019-20 (7th Cir. 1997); *see also Donovan v. City of Milwaukee*, 17 F.3d 944, 951 (7th Cir. 1994) (reaffirming that "the touchstone of a qualified immunity inquiry is the clarity of the state of the law in relation to the defendant's conduct at the time the conduct occurred" and "generalities are just not helpful in qualified immunity decisions because 'the bright line of clearly established law is staked out by a process of inclusion and exclusion in individual, concrete cases'"). In *Gregorich v. Lund*, 54 F.3d 410, 414 (7th Cir. 1995), the Seventh Circuit noted, "[d]ifferences in the nature of the competing interests from case to case make it difficult for a government official to determine, in the absence of case law that is very closely analogous, whether the balance that he strikes is an appropriate accommodation of the competing individual and governmental interests." Ultimately, "[p]ublic officials are entitled to immunity until it has been authoritatively decided

4

that certain conduct is forbidden." *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 875 (7th Cir. 1987).

Whether the law was clearly established at the time of the action is solely a question of law. *Khuans*, 123 F.3d at 1020. Moreover, the "plaintiff bears the burden of establishing the existence of a clearly established constitutional right." *Donovan*, 17 F.3d at 951. "Plaintiffs thus must shoulder a rather heavy burden, and appropriately so because qualified immunity is 'designed to shield from civil liability all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 952; s*ee also Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

"Although qualified immunity is an affirmative defense, once raised, it becomes the plaintiff's burden to defeat it." *Purvis v. Oest*, 614 F.3d 713, 717 (7th Cir. 2010). And because qualified immunity is a question of law, the Court is at all times tasked with determining whether Volpe and Ward are entitled to it. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

### B.     The Sexual Harassment Officer Position

In order for Plaintiff's Section 1983 claims to survive against Volpe and Ward, Plaintiff must establish that they each violated her clearly established constitutional right to be "appointed" to the SHO position. (*See* Sections III and IV below). In Plaintiff's case-in-chief, and throughout this litigation, she has never articulated the constitutional right at issue here, because, as the evidence has shown, she cannot articulate any constitutional right to the SHO position given the undisputed facts that: (1) the position was not vacant at the time Plaintiff alleges the constitutional violation occurred; (2) the position (and all of the Sexual Harassment functions) were housed in a department different from the one in which Plaintiff was assigned; and (3) even if the position was vacant and assigned to the Office of Compliance, the City's Court approved Hiring Plan required the position to be filled using the Senior Manager Hiring Process, which mandated conducing in multi-step posting and selection process.

5

Certainly, there was no clearly established law in 2009 (nor is there now) that would have prohibited Volpe or Ward from stopping, interfering with or questioning an alleged appointment to a position and insisting and ensuring that the *Shakman* Accord and the Senior Manager Hiring Process approved under the Accord were being followed. In fact, the opposite is true. Prior to 2009, the Seventh Circuit had expressly recognized the *Shakman* Decree's long-standing history of enjoining the City from patronage hiring practices for most positions and it had further recognized the City's institution of a multi-step hiring procedure to protect against such potential violations. *See O'Sullivan v. City of Chicago*, 396 F.3d 843, 847-853 (7th Cir. 2005); *Shakman v. City of Chicago*, 426 F.3d 925, 926-929 (7th Cir. 2005). Indeed, it is undisputed that the position at issue here, the SHO position, was a *Shakman*-covered position to be filled in accordance with the Senior Manager Hiring Process. Because there is no evidence that the Senior Manager Hiring Process was followed here, assuming Volpe and Ward interfered in some way, Plaintiff cannot possibly fault them for allegedly stepping in to ensure that the City did not commit a *Shakman* violation.

As this Court correctly noted in its dismissal of Plaintiff's *Shakman* claim, Plaintiff described her own claim as one based on Defendants' alleged refusal to honor an "unlawful promise" to appoint her to a *Shakman*-covered position in violation of the *Shakman* Accord and the City's Hiring Plan. *See* Document No. 57, Opinion and Order at p. 8. Although the Court also held that it was not ultimately making any factual findings, Plaintiff has not altered her original allegations from those presented in her original Complaint. In fact, had Volpe or Ward sat back and allowed Plaintiff to somehow be appointed to this *Shakman*-covered position in contravention of the Senior Manager Hiring Process – Volpe and Ward then would have been in violation of the court-approved Hiring Plan's mandate that employees report potential violations.

Plaintiff testified that the Senior Manager Hiring Process could be by-passed by using a transfer provision exception to the General Hiring Plan. She testified that the transfer provision was applicable to transfer employees who had lateral or lower level positions, and claimed that such rule was applicable here, because the Sexual Harassment Officer position was a lower level position than the Assistant Commissioner position. Trial Tr. 118:15-120:10. Plaintiff is just wrong and her legal conclusions must be disregarded. Further, she stated when she complained to the *Shakman* Monitor that that the Sexual Harassment Officer position would be a promotion for her and that was the basis of her complaint she filed in this case. Trial Tr. 256:2-9, 259:1; 323:21-25. In fact, Plaintiff testified that she was "told" that the Sexual Harassment Officer position would come with a salary of approximately $120,000, while she was earning $94,000. Trial Tr. 207:2-208-6. Moreover, Plaintiff also admitted that her position of Assistant Commissioner was not a career service position, which would preclude it from transfer rule coverage, in that the transfer rule specifically applies only to career service positions. Trial Tr. 324:1-7.

But even if the Court accepts Plaintiff's flawed assertion as true, her argument further highlights why Volpe and Ward are entitled to qualified immunity. The critical question for purposes of qualified immunity is whether there was a legitimate, open question on the issue. *See Hudson v. Burke*, 617 F. Supp. 1501, 1513-14 (N.D. Ill. Sept. 24, 1985) (subjecting a defendant to liability because he gambled and lost on the resolution of an open question departs from the principles articulated by the U.S. Supreme Court in *Harlow*). Certainly, Plaintiff's argument that an exception existed that would have allowed her to subvert the Senior Manager Hiring Process further calls into question the validity of the hiring process to Volpe and Ward's benefit. Simply put, the *Shakman* Decree and the City's Hiring Plan were intended to protect the hiring process

from political interference, and qualified immunity should protect individuals who raise questions about whether that hiring process is being followed properly.

Moreover, even if Plaintiff's allegations are given any credence, her claims against Volpe and Ward still fail. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Government officials are shielded from liability where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *McLaughlin v. Casler*, 634 F. Supp. 2d 881, 893 (N.D. Ill. 2009). The burden is on Plaintiff to show a clearly established right. *Gregorian v. Lund*, 54 F.3d 410, 413 (7th Cir. 1995). In her own complaint to the *Shakman* Monitor, Plaintiff stated that "[s]o essentially political influence by the Mayor's Office robbed me of a promotion, which is unlawful as I see it. ***But I could be wrong.***" Trial Tr. 258:9-11 (emphasis added).

Here, Plaintiff has not and cannot point to any clearly established law that would have prohibited Volpe or Ward from stopping an appointment to a Shakman covered position that would have been improper under the *Shakman* Decree and the Hiring Plan. In fact, assuming Volpe and Ward were aware of this alleged "appointment," had they done nothing, their failure to report would have been a violation of the *Shakman* Consent Decree.

### C. The End of Plaintiff's Temporary Detail

Plaintiff similarly has articulated no constitutional right to a temporary detail to the Office of Compliance from the Department of Human Resources. (*See* Section III and IV below). But even if Plaintiff could articulate a constitutional right, Volpe and Ward still are entitled to qualified immunity on the end of detail claims because any such alleged interference would not have been a violation of a clearly established right. It is undisputed that one person – Anthony Boswell – had the authority and actually made the decision to end Plaintiff's temporary detail to

8

the Office of Compliance. In fact, Seventh Circuit case law makes clear that the City vests its department heads, such as Mr. Boswell, with authority to initiate and make personnel decision, not Deputy Directors such as Ward or individuals not even working in the same department as the aggrieved employee, such as Volpe. *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (a deputy director cannot be individually liable in a Section 1983 case where the deputy carries out a personnel decision made by his superior); *Waters v. City of Chicago*, 580 F.3d 575, 582 (7th Cir. 2009) (the City of Chicago vests department heads with authority to initiate and make personnel decisions for their department). Thus, even if the evidence presented by Plaintiff could be interpreted as Volpe or Ward having some involvement in the end of Plaintiff's detail – which it does not – their involvement certainly would not have violated clearly established law, and they are further entitled to qualified immunity of the end of detail claims.

### III. PLAINTIFF HAS FAILED TO OFFER ANY EVIDENCE FROM WHICH A REASONABLE JURY COULD FIND THE INDIVIDUAL DEFENDANTS LIABLE FOR A CONSTITUTIONAL VIOLATION UNDER THE FIRST AMENDMENT

Volpe and Ward are entitled to judgment as a matter of law at the close of Plaintiff's case-in-chief because no reasonable jury could find that Volpe or Ward committed a First Amendment constitutional violation under Section 1983 because: (1) Plaintiff did not engage in constitutionally protected speech; (2) Plaintiff did not suffer a deprivation likely to deter free speech; (3) no reasonable jury could conclude that Volpe or Ward were aware of Plaintiff's complaints to the Federal Monitor; and (4) no reasonable jury could conclude that Volpe and Ward had any personal involvement in interfering with Plaintiff's supposed "appointment" to the SHO position or ending her temporary detail to the Office of Compliance.

### A. Plaintiff Did Not Engage in Constitutionally Protected Speech

Plaintiff's political interference claim suffers from a fundamental flaw: she did not testify regarding any identifiable *political* affiliation or non-affiliation that could have triggered constitutional protection. Although courts have defined "political affiliation" (or political non-affiliation) in the First Amendment context broadly, they steadfastly insisted on a *political* element. *See Curinga v. City of Clarion*, 357 F.3d 305, 309 (3d Cir. 2004) ("courts have broadly defined 'political affiliation' to include commonality of political purpose, partisan activity, and political support."); *Balogh v. Charron*, 855 F.2d 356, 361 (6th Cir. 1988) (political affiliation refers to commonality of political support).

Here, there is nothing political at issue within the meaning of the First Amendment. Plaintiff testified at trial that "when I say political affiliation I'm not referring to Democrat or Republican. I am just referring to someone using their influence, or as its termed 'clout,' to push whether a person is promoted or treated one way or another." Trial Tr. at 78:5-8. Plaintiff *never* testified that she espoused or rejected a particular political view or affiliation, but instead that she was disliked by the Mayor's Office because she had "ruffled feathers" and made complaints. Trial Tr. at 78:23-79:6. The political freedom guarantee of the Constitution, however, does not prohibit the Mayor or his office from disliking someone. If that were the case, any office disagreement could spawn a potential federal lawsuit. Because Plaintiff failed to demonstrate a protectable *political* interest, her interference claim fails.

Further, Plaintiff failed to present any evidence that either Mr. Volpe or Mr. Ward had any knowledge of Plaintiff's political affiliations or lack of political affiliations. Trial Tr. 260:2-261:16.

Moreover, the First Amendment does not protect speech made by public employees as part of their official duties. *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008), *citing*

10

*Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The question is whether Plaintiff was acting as a citizen or as an employee pursuant to her official duties. *Id.* The inquiry focuses on what duties the employee is expected to perform and is not limited to a formal job description. *Trigillo v. Synder*, 547 F.3d 826, 829 (7th Cir. 2008).

Based on the evidence presented at trial, no reasonable jury could find that Plaintiff was speaking merely as a citizen and not in accordance with her job duties as an Assistant Commissioner working in the Office of Compliance – the very office charged with ensuring that the City's hiring practices did not violate the *Shakman* Decree and the Hiring Plan. Plaintiff claims that her protected speech involved complaints to the *Shakman* Monitor, to which she testified that she had a duty as a City employee to make such complaints and the complaints were job related. *See, e.g., Houskins*, 549 F.3d at 491 (filing incident report fulfilled general duty as an employee to report incidents of misconduct and was not protected speech). Thus, Plaintiff's complaints to the *Shakman* Monitor do not qualify for First Amendment protection.

Further, even assuming that one or more of Plaintiff's alleged complaints to the *Shakman* Monitor were made outside the scope of her official duties, "[s]peech that serves a private and personal interest, as opposed to a public one, does not satisfy the standards for First Amendment protections." *Houskins*, 549 F.3d at 492. Specifically, Plaintiff testified that her complaints to the *Shakman* Monitor were about her own employment, and were motived solely by her own personal interest, not a public concern. Tr. Transcript at 331:13-333:13. Thus, no reasonable jury could find that Plaintiff engaged in constitutionally protected speech.

### B. Plaintiff Did Not Suffer a Deprivation Likely to Deter Free Speech

As a second threshold matter, the ending of Plaintiff's temporary detail had no adverse impact on Plaintiff and certainly would not be the type of employment action that would deter anyone from exercising their First Amendment rights – nor did it in this case. In fact, there has

been no evidence presented to the jury that Plaintiff suffered any deprivation – she maintained the same job title (Assistant Commissioner) and salary (approximately $94,000) before, during and after her temporary detail to the Office of Compliance. *See Berry v. Illinois Dep't of Human Servs.*, No. 00 C 5538, 2003 WL 22462547, *14 (N.D. Ill. Oct. 29, 2003) (plaintiff cannot claim transfer would deter speech when no evidence that transfer was a negative assignment). The ending of Plaintiff's temporary detail simply meant that Plaintiff returned to the Department of Human Resources, where she originally worked, but at a time when a whole new management team had been put into place.

Equally important is Plaintiff's own admission that she actually was not deterred in any way from continuing to exercise her right to speak up when she thought appropriate to do so. Indeed, Plaintiff testified that she complained to the *Shakman* Monitor about the Assistant Commissioner Position Survey. *See Henderson v. Adams*, No. 06 C 6451, 2007 WL 4287559, *6 (N.D. Ill. Nov. 30, 2007) (filing complaints after alleged retaliatory acts shows that plaintiff was not deterred from engaging in free speech); *Swapsy v. Knoblett*, No. 09-577-JPG-CJP, 2010 WL 4781124, *3 (S.D. Ill. Oct. 13, 2010) (plaintiff cannot establish that alleged retaliatory actions would deter future speech when plaintiff continues filing grievances). Trial Tr. at 289:14-290:2.

Lastly, it is undisputed that the ending of Plaintiff's temporary would not be an action that would have likely deterred free speech. Plaintiff merely returned to the Department of Human Resources with the same title as Assistant Commissioner and the same salary, $94,000. Trial Tr. at 262:23-264:18. She went from merely investigating equal employment opportunity complaints with no direct reports, to running the operations of the Employment Services Unit of the Department of Human Resources with a staff of two to three employees. *Id.*

Thus, no reasonable jury could find that Plaintiff suffered a deprivation likely to deter free speech.

C.  **No Reasonable Jury Could Conclude that Volpe or Ward Were Aware of Plaintiff's Complaints to the Federal Monitor**

A critical element of any First Amendment retaliation claim is causation, *i.e.*, whether Plaintiff's speech was at least a motivating factor in the employer's actions. Any causation analysis requires a defendant's knowledge of the alleged protected activities. *See, e.g., Zerante v. DeLuca*, 555 F.3d 582, 585 (7th Cir. 2009) (plaintiff "lacked personal knowledge that [defendants] knew of her campaign activities"); *Stagman v. Ryan*, 176 F.3d 986, 1001 (7th Cir. 1999) ("If [defendant] did not know about [the protected activities], it is impossible to conclude that [defendant's] decision to fire [plaintiff] was motivated by an illegitimate desire to prohibit [plaintiff] from exercising them").

Here, Plaintiff asserts different alleged retaliatory motives for Ward and Volpe. Plaintiff claims that Ward had knowledge that Plaintiff complained to the *Shakman* Monitor about his supposed failure to appoint her to the Sexual Harassment Officer position and the ending of her temporary detail to the Office of Compliance. Plaintiff, however, has not presented one shred of evidence that would allow the jury to conclude that Ward knew of the complaints at any time before the ending of her detail, on September 14, 2009. Trial Tr. at 387:20-388:2. She never testified that she told Ward that she had been complaining to the Monitor. Without such evidence, no reasonable jury could find a causal connection between the claimed protected activity and the actions allegedly taken by Ward against Plaintiff.

The protected activity that Plaintiff relies upon for Volpe is different. Plaintiff's claim against Volpe is that he retaliated against her due to complaints she made to the *Shakman* Monitor prior to September 2008. First, Plaintiff never presented any evidence that she made

13

complaints to the Federal Monitor prior to September 2008, but even if she had, there is nothing in the record from which a reasonable jury could conclude that Volpe was aware of any complaints. In fact, Volpe's unrefuted evidence shows that Volpe never heard of Theresa Hill until she sued him. Trial Tr. 398:21-399:6. Thus, no reasonable jury could conclude that there was any causal connection between the claimed protected activity and the actions allegedly taken by Volpe against Plaintiff.

### D. No Reasonable Jury Could Conclude that Volpe or Ward Had Any Personal Involvement in Plaintiff's Alleged Appointment to the SHO Position or the Ending of Her Temporary Detail to the Office of Compliance

Individual liability under Section 1983 requires a basis upon which to impose liability. It is well established that an individual cannot be personally liable under Section 1983 unless he or she causes – through direct participation or significant involvement – the deprivation of rights at issue. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Furthermore,

> Individual liability under §1983 requires personal involvement in the alleged constitutional deprivation. As the Seventh Circuit instructs, Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation. Put another way, for an individual to be liable under Section 1983, he or she must have personal involvement in the decision-making allegedly amounting to a violation of the plaintiff's constitutional rights.

*Albritton v. Village of Dolton*, 2011 WL 4501418, *4 (N.D. Ill. Sept. 28, 2011) (internal citations omitted); *see also Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions.").

Volpe testified that he never heard of Plaintiff until she sued him in this case, thus, he could not have caused or been involved in the denial of the SHO position or the ending of Plaintiff's detail. Trial Tr. 398:21-399:6. Plaintiff has offered no evidence to the contrary from which a jury could conclude otherwise. Thus, judgment as a matter of law in Volpe's favor is

14

warranted.

Similarly, Plaintiff has not presented any evidence to the jury that would warrant a finding that Ward participated in or caused the deprivation at issue. In the absence of such evidence – that Ward caused or was significantly involved in the alleged deprivation of Plaintiff's constitutional rights – judgment as a matter of law is warranted. Under relevant case law, a City employee in Ward's position – two levels removed from decision-making authority – cannot be found to have caused the deprivation because he lacked authority to do so. In *Waters v. City of Chicago*, 580 F.3d 575 (7th Cir. 2009), the Seventh Circuit interpreted the City's Personnel Rules in the context of a section 1983 case. Based on its extensive analysis of the Personnel Rules, the Seventh Circuit held that the City vests *department heads* with authority to initiate and make personnel decisions. In *Waters*, a former employee of the Chicago Department of Transportation (CDOT) filed a section 1983 claim against the City and several individual defendants for an alleged violation of his First Amendment rights. The Court reversed the district court's judgment as a matter of law for the plaintiff, and directed that judgment as a matter of law be entered in favor of the defendants.

The fact that *Ward* did not make the decision to end Hill's detail – and did not even have authority to do so – dooms Hill's claim against him. In *Delapaz v. Richardson*, 634 F.3d 895 (7th Cir. 2011), the Seventh Circuit held that a deputy director cannot be individually liable in a section 1983 case where the deputy carries out a personnel decision made by his superior. Just as Deputy Commissioner Richardson could not be liable under section 1983 for carrying out a personnel decision made by Commissioner Picardi in *Delapaz*, Deputy Director Ward cannot be liable under section 1983 for carrying out a personnel decision made by the Director of the Office of Compliance.

Additionally, even assuming Ward had the authority to appoint Hill to the SHO position (which he did not), he could not have appointed her to the position because the position was not vacant, the position was not in the Office of Compliance where Ward and Plaintiff worked, the position was a *Shakman*-covered position subject to the Senior Manager Hiring Process, that had not been followed here.

IV. **PLAINTIFF HAS FAILED TO OFFER ANY EVIDENCE FROM WHICH A REASONABLE JURY COULD FIND THE INDIVIDUAL DEFENDANTS LIABLE FOR A CONSTITUTIONAL VIOLATION BASED ON POLITICAL INTERFERENCE**

Plaintiff claims that Volpe and Ward interfered with or prevented her from being appointed to the SHO position and ended her temporary detail to the Office of Compliance because of her political affiliation or non-affiliation. Simply put, Plaintiff's case-in-chief was completely void of any evidence to support such a claim against either Volpe or Ward. There was no evidence presented to the jury that Ward discussed Plaintiff with the Mayor's Office, or, in particular, Volpe, who did not know that Plaintiff was a City employee until he was sued by her, and there is no evidence that Volpe or Ward were aware of her political affiliation or non-affiliation. In fact, the only testimony offered by Plaintiff is her claim that the Mayor's Office disliked her because she made complaints, not that she espoused or rejected a particular political view. The political freedom guarantee of the Constitution does not prohibit the Mayor or his office from disliking someone. Further, like the retaliation claim, the political interference claim fails because Volpe and Ward did not have any personal involvement or authority to place Plaintiff in the *Shakman*-covered position. For these reasons, judgment as a matter of law is warranted in favor of Volpe and Ward on Plaintiff's political interference claims.

## V. THERE IS NO BASIS FOR A PUNITIVE DAMAGES INSTRUCTION

Even if the Court finds sufficient evidence for the jury to consider whether the Volpe and Ward are liable to the Plaintiff on her political interference or retaliation theories, there is no basis for the jury to consider punitive damages. "[A] jury may be permitted to assess punitive damages in an action under §1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). In other words, Plaintiff:

> can recover punitive damages only if [she] presented sufficient evidence for the jury to conclude that [defendants] acted with "malice or with reckless indifference to [her] federally protected rights." 42 U.S.C. § 1981a(b)(1). To act with "malice" or "reckless indifference," "an employer must at least [act] in the face of a perceived risk that its actions will violate federal law." *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 536, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). No evidence of "egregious" or "outrageous" conduct by the employer is required, although, of course, such a showing could support a conclusion that the employer acted with the requisite mental state. *Id.* at 535, 538, 119 S.Ct. 2118. "'[A] positive element of conscious wrongdoing is always required.'" *Id.* at 538, 119 S.Ct. 2118 (quoting C. McCormick, *Law of Damages* 280 (1935)).

*May v. Chrysler Group, LLC*, 716 F.3d 963, 974 (7th Cir. 2013) (affirming district court's order vacating jury's award of $3,500,000 in punitive damages).[1]

The case of *Gile v. United Airlines, Inc.*, 213 F.3d 365 (7th Cir. 2000), is instructive. The plaintiff was an employee who was assigned to the night shift, at her own request, when "she began suffering from a cluster of psychological disorders" which were attributed to "insomnia and exhaustion from sleep deprivation." *Id.* at 368. When she sought to address the issue, "United refused [her] repeated requests and suggested that she consider quitting her job instead." *Id.* She refused and United thereafter put her on a leave of absence, and then fired her. *Id.* at 370. At trial, the jury found in favor of the Plaintiff and awarded compensatory damages and

---

[1] The standards for punitive damages under §1981a(b)(1) and §1983 are the same. *E.g. Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 440-441 (4th Cir. 2000).

17

"$500,000 in punitive damages." *Id.* at 371. The employer appealed and the Seventh Circuit affirmed the employer's liability and compensatory damages award, but held that the punitive damages award was improper and reversed it. The court held, "Punitive damages depend not on the egregiousness of the defendant's misconduct, or its callousness...but instead run from a culpable state of mind regarding whether [defendant's conduct] violates federal law. *Id.* at 375.

Here, there is simply no evidence suggesting that either Volpe or Ward had "a culpable state of mind," no evidence that they perceived any risk whatsoever that their decisions might violate federal law, and no evidence whatsoever of conscious wrongdoing. Accordingly, there is no basis under which "a rational jury could [find] for [P]laintiff" regarding punitive damages. *Id.* at 372. Thus, in the event any of the Section 1983 claim survives this motion, judgment as a matter of law is warranted on the issue of punitive damages.

## VI. CONCLUSION

For all of the foregoing reasons, as well as those discussed orally, Defendants Paul Volpe and Torrick Ward respectfully request that this Honorable Court enter judgment in their favor as a matter of law pursuant to FRCP 50(a), and that the Court grant such further and additional relief as it deems just and proper.

Dated: July 9, 2015

Respectfully submitted,

CITY OF CHICAGO, PAUL VOLPE
and TORRICK WARD

By: /s/ Jennifer Naber
    One of Their Attorneys

Joseph M. Gagliardo (00901989)
Jennifer Naber (6197465)
Heather Becker (6280584)
Laner Muchin, Ltd.
515 N. State Street, Suite 2800
Chicago, Illinois 60654
(312) 467-9800

# CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2015, I electronically filed the foregoing **Defendants Paul Volpe and Torrick Ward's Memorandum in Further Support of Their Oral Motion for Judgment as a Matter of Law at the Conclusion of Plaintiff's Case-In-Chief**, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

        Steven J. Seidman
        Sean M. Baker
        The Law Offices of Steven J. Seidman
        Two First National Plaza
        20 S. Clark St., Suite 700
        Chicago, IL 60603

        Barry A. Spevack
        Monico, Pavich & Spevack
        Two First National Plaza
        20 S. Clark St., Suite 700
        Chicago, IL 60603

        Daniel Kaufman (6194714)
        Brian P. Paul (6286839)
        Sarah E. Flotte (6296385)
        Michael Best & Friedrich, LLP
        180 N. Stetson Avenue, Suite 2000
        Chicago, Illinois 60601


        s/ Jennifer Naber